IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER HANEY-FILIPPONE, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | NO. 20-5303 |
| | : | |
| AGORA CYBER CHARTER SCHOOL, | : | |
| *Defendant.* | : | |

MEMORANDUM

Kenney, J.                                                                                                                                                      May 10, 2021

      Plaintiff Heather Haney-Filippone sued her employer, Agora Cyber Charter School, following its decision not to allow her to take leave under the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 134 Stat. 178. Defendant is a cyber charter school operating pursuant to a grant of authority from the Pennsylvania Department of Education. The FFCRA is an act passed by Congress requiring certain employers to provide emergency family leave and paid sick leave for employees unable to work because of the COVID-19 pandemic. Two divisions of the FFCRA are relevant there: Division C, which is the Emergency Family and Medical Leave Expansion Act ("EFMLEA"), and Division E, which is the Emergency Paid Sick Leave Act ("EPSLA"). Before the Court are cross-motions for judgment on the pleadings on the sole issue of whether Agora is a covered employer under the FFCRA provisions cited by Plaintiff.

I.     **FACTUAL BACKGROUND**[1]

---

[1] In deciding a motion for judgment on the pleadings, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where Plaintiff's claims are based on those documents, and matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

Plaintiff Heather Haney-Filippone works as a third grade English Language Arts and Special Education teacher for Agora. ECF No. 1 ¶ 8-9, ¶ 16. Agora Cyber Charter School ("Agora" or "Defendant") is a Pennsylvania nonprofit organization operating a cyber charter school. ECF No. 1 ¶ 10-11. For her position at Agora, Plaintiff is required to remotely co-teach live classes throughout the day, monitor and track individual student goals, meet with individual students one-on-one, and attend meetings and calls with parents. ECF No. 1 ¶ 17.

After the COVID-19 pandemic shut down the traditional public schools her children attended and her youngest child's daycare, Plaintiff's four children (ages 4, 9, 12, and 17) were suddenly home full-time. ECF No. 1 ¶ 3, ¶ 25. ¶ 38. Agora's operations were not impacted by the COVID-19 shutdown orders. ECF No. 1 ¶ 40. In the Spring of 2020, Agora accommodated the scheduling needs of employees like Plaintiff by limiting the number of classes Plaintiff was required to teach. ECF No. 1 ¶ 4, ¶ 43-47. However, at the beginning of the 2020-2021 school year, Agora went back to "business as usual" and nearly doubled the number of students Plaintiff was required to teach. ECF No. 1 ¶ 4. Faced with the daunting task of supervising her own children and managing a full teaching schedule, Plaintiff inquired several times about taking leave under the FFCRA. ECF No. 1 ¶ 5, ¶ 49-51, ¶ 55-62, ¶ 64-66. Agora did not allow Plaintiff to take leave and instead took the position that it is a "private entity" employing over 500 people, and therefore it is not subject to the paid and unpaid leave provisions of the FFCRA. ECF No. 1 ¶ 6, ¶ 58, ¶ 63. Unable to take leave, Plaintiff used vacations days to supervise her children during the day as much as possible and worked on weekends and evenings to complete her professional obligations. ECF No. 1 ¶ 72-73.

II. **PROCEDURAL HISTORY**

2

Plaintiff filed her Complaint against Agora on October 23, 2020, seeking a judgment declaring that Agora is a "covered employer" under the FFCRA (specifically the Emergency Family and Medical Leave Expansion Act ("EFMLEA") and the Emergency Paid Sick Leave Act ("EPSLA")) (Count I) and relief for Agora's alleged violations of the FCCRA, the Family and Medical Leave Act ("FMLA"), and the Fair Labor Standards Act ("FLSA") (Counts II and III). ECF No. 1. On November 25, 2020, Defendant filed its Answer, arguing, *inter alia*, that it has not violated any federal law, that it did not violate Plaintiff's rights under the FFCRA, the FMLA, or the FLSA, and that the FFCRA is not applicable. ECF No. 15 at 15. On February 26, 2021, Plaintiff filed a Motion for Partial Judgment on the Pleadings on the issue of whether Defendant Agora Cyber Charter School is a covered employer under the FFCRA's EFMLEA and EPSLA (ECF No. 21). Defendant then filed a Cross-Motion for Judgment on the Pleadings arguing that Plaintiff's Complaint should be dismissed with prejudice for failure to state a claim since Defendant is not a covered employer under the EFMLEA and EPSLA. ECF No. 23. The Court held oral arguments on April 21, 2021 on the cross-motions, which are now before the Court for resolution.

### III. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The Court has original subject matter jurisdiction over this matter because it arises under the laws of the United States and raises a federal question. 28 U.S.C. § 1331.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court may grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., In*c., 938 F.3d 466, 470 n.7 (3d Cir. 2019) (quotation omitted). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion,

construing all allegations in the complaint as true and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Judgment on the pleadings should be granted when "the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 349 (3d Cir. 2018). Parties may move for partial judgment on the pleadings on discrete issues. *United States v. Brace*, 2018 WL 9815251 (W.D. Pa. July 31, 2018).

## IV. RELEVANT LAW

Congress passed the Families First Coronavirus Response Act ("FFCRA") on March 18, 2020 to address the challenges facing employees and the general public as a result of the emergent COVID-19 pandemic. The FFCRA was the second major legislative initiative to remediate pandemic-related problems. The two divisions of the FFCRA relevant here, Division C (the Emergency Family and Medical Leave Expansion Act ("EFMLEA")) and Division E (the Emergency Paid Sick Leave Act ("EPSLA")), created two new requirements for certain employers to provide emergency family leave and paid sick leave for employees unable to work because of the coronavirus. Pub. L. No. 116-127, 134 Stat. 178. These new paid sick leave and expanded family and medical leave requirements became effective on April 2, 2020 and expired on December 31, 2020. An employee denied leave under either provision can sue his or her employer.[2]

---

[2] The U.S. Code and the Code of Federal Regulations make clear that Plaintiff has a private right of action against Agora under these two provisions of the FFCRA. *See* 29 C.F.R. § 826.150(b) (stating that an employer who fails to comply with the EPSLA is subject to the enforcement provisions in sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217). 29 U.S.C. § 216 provides that an employee can sue his or her employer for applicable violations in any Federal or State court of competent jurisdiction.

4

## A. The Emergency Family and Medical Leave Expansion Act

Division C of the FFCRA is the Emergency Family and Medical Leave Expansion Act ("EFMLEA," FFCRA §§ 3101-3106), which temporarily expanded the Family and Medical Leave Act ("FMLA," 29 U.S.C. § 2601 *et seq*.) to provide for certain COVID-19-related family leave. *See* FFCRA § 3102(a)(1). Specifically, the EFMLEA requires certain employers to provide up to twelve weeks of leave for employees who have been on the job for at least thirty days and who are unable to work or telework because they have to care for a child due to the coronavirus. *See* FFCRA §§ 3102(a)(2); 3102(b) (adding FMLA §§ 110(a)(1)(A), (a)(2)(A)). While the first ten days for which an employee takes emergency family leave may be unpaid, after ten days, employees are entitled to job-protected paid emergency family leave at two-thirds of their regular wages, up to a statutory cap, for the remaining ten weeks of the FMLA period. *See* FFCRA § 3102(b) (adding FMLA §§ 110(b)(1)(A)-110(b)(2)).

The EFMLEA applies to a slightly narrower set of employers and employees than other sections of the FMLA.[3] *See* Paid Leave Under the Families First Coronavirus Response Act, 85 Fed. Reg. 19326-01 (April 6, 2020) (to be codified at 29 C.F.R. pt. 826). Only private employers with fewer than 500 employees and public agencies must comply with the EFMLEA. *Compare* FFCRA § 3102(b) (amending 29 U.S.C. § 2611(4)(A) to effectively read "the term 'employer' means any person engaged in commerce or in any industry or activity affecting commerce who

---

29 C.F.R. § 826.151(b) states that an employer who interferes with an employee's EFMLEA rights is subject to the enforcement provisions in section 107 of the FMLA, 29 U.S.C. 2617, and 29 C.F.R. § 825.400, and that the employee can file a private action to enforce the EFMLEA if the employer is otherwise subject to the FMLA. Educational institutions are covered by the FLMA. *See* 29 C.F.R. § 825.600(b).

[3] For example, as it relates to the federal government, only federal employees covered by Title I of the FMLA are potentially eligible under the EFMLEA. 29 U.S.C. 2611(2)(B)(i).

employs fewer than 500 employees and includes any 'public agency', as defined in Section 203(x) of the FLSA") *with* 29 U.S.C.A. § 2611(4)(A)-(B). As Plaintiff has not disputed that Agora employs more than 500 employees, Agora is only subject to EFMLEA if it is a "public agency." The EFMLEA adopts the definition of "public agency" from Section 203(x) of the FLSA. 29 U.S.C. §§ 2620, 2611(4)(A)(iii). Section 203(x) of the FLSA defines "public agency" as "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States …, a State, or a political subdivision of a State; or any interstate governmental agency." 29 U.S.C. § 203(x). It is important to note that the FFCRA amendment to the FMLA is not written on a blank slate; the FMLA and the rest of the federal Labor Code are a detailed and heavily regulated area of law. The EFMLEA therefore must be read against this background of extensive federal statutory law, case law, regulations, and administrative decisions.

As a general matter, the FMLA applies to educational institutions so long as the other requirements are met. *See* 29 C.F.R. § 825.600(b) ("Educational institutions are covered by FMLA"); 29 C.F.R. § 825.104(a) ("Public as well as private elementary and secondary schools are [ ] covered employers."); *see also Kobielnik v. W. Cape May Bd. of Educ.*, No. CV 13-03805 (RMB/JS), 2015 WL 12743598, at *2 (D.N.J. Mar. 11, 2015) (citing 29 C.F.R. § 825.600(b) in applying FMLA rules in suit against school board); *Kordistos v. Mt. Lebanon Sch. Dist.*, No. CV 16-615, 2017 WL 3593882 (W.D. Pa. Aug. 21, 2017); *Fiorentini v. William Penn Sch. Dist.*, 150 F. Supp. 3d 559, 570 (E.D. Pa.), *aff'd*, 665 F. App'x 229 (3d Cir. 2016) (noting there was "no dispute" that defendant school district was subject to the FMLA); *Hubbard v. Pleasant Valley Sch. Dist.*, No. CIV.A. 3:CV-03-0797, 2006 WL 42093 (M.D. Pa. Jan. 6, 2006). Further, the FMLA has specific provisions for how the statute's leave requirements apply to schools due to

schools' unique work calendars. *See* 29 U.S.C. 2618(a)(1)(A). It is clear from the face of section 2618 that it does not expand the definition of a "covered employer" under the FMLA. Rather, it presupposes that schools are covered. Courts have also found the FMLA applies to charter schools, not just traditional public schools, districts, and school boards. *Callaway v. Acad. of Flint Charter Sch.*, 904 F. Supp. 2d 657, 668 (E.D. Mich. 2012) (denying defendant's summary judgment motion on teacher's FMLA claims for interference and retaliation against her charter school employer); *see also Provence v. Avon Grove Charter Sch.*, No. CIV. A. 07-659, 2008 WL 2928314, at *12 (E.D. Pa. July 28, 2008) (finding that Pennsylvania charter school did not prejudice employee's FMLA right); *Kelly v. Richard Wright Pub. Charter Sch.*, No. CV 16-1853 (TJK), 2019 WL 451348, at *4-7 (D.D.C. Feb. 4, 2019) (same).

Further, courts have held that school districts and school boards are "public agencies" under the FMLA. *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 818 (D.N.J. 2006) (holding that the Defendant Board of Education was a "public agency" under the FMLA); *Herman v. Princeton City Sch.*, No. C-1-96-358, 1997 WL 861836, at *1 (S.D. Ohio Sept. 23, 1997) (finding that "Princeton City Schools is a public agency … [and] an employer within the meaning of the Family and Medical Leave Act"); *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 201–02 (D. Conn. 2012) ("it is apparent that the Board [of Education], a public agency, constitutes an employer under [29 U.S.C. § 2611] 4(A)(iii)"). Since these entities are all covered under the FMLA, the key here is whether Agora—as a public cyber charter—differs from public schools, school boards, and school districts in such a way that it would not fall into the same definition of "public agency."

The Court notes that how state law treats an entity is relevant to whether it is a "public agency" within the meaning of the FMLA. By referencing U.S. Code Title 20's definition of a

7

"local educational agency," the FMLA explicitly incorporates how state laws define an educational entity. *See* 29 U.S.C. 2618(a)(1)(A) (cross-referencing 20 U.S.C. § 7801's definition of a "local educational agency"). 20 U.S.C. § 7801 defines local educational agency as "a public board of education or other public authority *legally constituted within a State* for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State." 20 U.S.C. § 7801(30)(A) (emphasis added); *see Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 818 (D.N.J. 2006) (noting that "[i]n New Jersey, the definition of 'political subdivision' includes a 'school district'" in holding that the defendant board of education was a "public agency" under the FMLA) (citing N.J.S.A. 52:27–BB–2). Since Agora exists within a framework of Pennsylvania law, how that law treats Agora is relevant to this Court's determination of whether Agora is covered under the EFMLEA.

Pennsylvania law treats a public charter school like Agora as a public entity similar to a school district in several significant respects, and supports a finding that Agora is "public agency" for FMLA and EFMLEA purposes. Charter schools are "independent public schools established and operated under a charter." 24 P.S. § 17-1703-A. Pennsylvania law defines both school districts and public charters as "bodies corporate." *See* 24 P.S. § 2-211 ("The several school districts in this Commonwealth shall be, and hereby are vested as, bodies corporate, with all necessary powers to enable them to carry out the provisions of this act"); 24 P.S. § 17-1714-A(a) ("A charter school established under this act is a body corporate and shall have all powers necessary or desirable for carrying out its charter"). Pennsylvania charter schools can "[s]ue and be sued, but only to the same extent and upon the same condition that political subdivisions and local agencies can be sued." 24 P.S. § 17-1714-A. Trustees of charter schools are "public

8

officials." 24 P.S. § 17-1715-A. Further, charter schools are publicly funded because they receive their funding from the school districts where students attending the charter school reside. 24 P.S. § 17-1725-A(a). Cyber charter schools are regulated and subject to annual assessments by the Pennsylvania Department of Education. 24 P.S. § 17-1742-A.

A Pennsylvania COVID-specific state law related to schools supports a finding that Agora is not meaningfully distinguishable from traditional public schools and school districts for some regulatory purposes. Act 13 of 2020 amended the Pennsylvania School Code to add a new section called "Pandemic of 2020," which defines charter schools, public schools, and school districts all as "school entit[ies]." 24 P.S. § 15-1501.8 ("School entity. Any school district, intermediate unit, area career and technical school, charter school, cyber charter school or regional charter school a child attends in order to fulfill the compulsory attendance requirements of this act."). Private schools are not included in this definition.

Based on the above, the Court concludes that Agora is a "public agency" under the FMLA. While Agora has some hallmarks of a private entity—it was founded by private individuals and is run by a board of privately appointed members—the weight of the legal authority supports a finding that it a "public agency." School districts, education boards, and charters are all employers under the FMLA, and school boards and school districts have been specifically held to be "public agencies." *E.g.*, 150 F. Supp. 3d at 570; 421 F. Supp. 2d at 818; *Kelly*, 2012 WL 425257, at *3. Pennsylvania law provides that charters, like its school districts, are bodies corporate and gives charters the power to sue and be sued to the same extent as political subdivisions and local agencies can be sued. 24 P.S. § 2-211; 24 P.S. § 17-1714-A(a)(2). Since public charters operate outside the governance of school districts and public-school boards, charters function as schools and as their own administrative bodies. That

9

Pennsylvania law gives charters possess these dual roles drives the Court's finding that charters are "public agencies" under the FMLA.

A Middle District of Pennsylvania case, *Kelly v. Bloom*, is instructive here. No. 3:11CV928, 2012 WL 425257, at *3 (M.D. Pa. Feb. 9, 2012). In that case, the court found that a plaintiff employed by a charter school could sue that charter under the Equal Pay Act. *Id.* In determining whether the employee could sue, the court cited the provision in that statute stating which "individual[s] employed by a public agency" were defined as "employees." *See id* (citing 29 U.S.C. § 203(e)(2)).[4] While the court did not explicitly find that the charter defendant was a "public agency," the court assumed as much for the purposes of assessing the plaintiff's ability to bring Equal Pay claims as an employee. The *Kelly* court also found 24 P.S. § 17-1714-A(a)(2) significant in determining whether a charter school could be sued for Labor Code violations. *Id.* Likewise here, Agora can be sued under the EFMLEA just as a public-school district or education board could be sued.

Defendant has not brought forward authority to persuade the Court to take a different view. Defendant points out that is it unclear—perhaps even doubtful—that Agora is a "political subdivision." Defendant cites the National Labor Relations Board decision in *Agora Cyber Charter School* finding that Agora is not a "political subdivision," such that it would be exempt from the requirements under the National Labor Relations Act ("NLRA"). 04-RC-170767 (April 5, 2016); *aff'd Agora Cyber Charter School*, 2016 WL 6821477 (NLRB). However, that decision

---

[4] While *Kelly v. Bloom* deals with claims under the Equal Pay Act, that court's findings on the statutory language are relevant to this Court's decision here because the Equal Pay Act is part of the Labor Code, Title 29 of the U.S Code, just like all the statutes relevant to this matter. *Alvarado v. United States*, No. CV 16-5028, 2017 WL 2303758, at *2 n.2 (D.N.J. May 25, 2017) (where terms "are part of the same Title, they must be read consistently") (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (applying the "basic canon of statutory construction that identical terms within an Act bear the same meaning")).

does not address whether Agora is a "public agency", it only addresses whether Agora is a "political subdivision." There, the NLRB found that Agora was created by a "private individual" and that its "Trustees are not appointed by or responsible to public officials," so it failed the *Hawkins* test for whether an entity is an exempt political subdivision of a state under the NLRA. *Id.* (citing *NLRB v. Natural Gas Utility District of Hawkins County*, 402 U.S. 600 (1971). The Third Circuit has also questioned whether public charter schools can rightfully be called "political subdivisions." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 684 (3d Cir. 2011) (reversing the district court's holding that under the Pennsylvania Charter School Law the defendant charter school was a political subdivision not entitled to relief under § 1983).

However, Agora does not need to be a political subdivision to fall within the ambit of the EFMLEA. The applicable definition of a "public agency" is "the Government of the United States; the government of a State or political subdivision thereof; *any agency of the United States …, a State, or a political subdivision of a State*; or any interstate governmental agency." 29 U.S.C. § 203(x) (emphasis added). Thus, Agora can be a "public agency" if it is an agency of a state or political subdivision. The Court emphasizes that Pennsylvania law provides that charter schools can "[s]ue and be sued … to the same extent and upon the same condition that political subdivisions and local agencies can be sued." 24 Pa. Stat. Ann. § 17-1714-A. As detailed above, the federal Labor Code specifically incorporates a state's designation of its public educational institutions. *See* 29 U.S.C. 2618(a)(1)(A) (incorporating 20 U.S.C. § 7801's definition of a "local educational agency," which includes how the entity is "legally constituted within a State"). The Court finds that for FMLA purposes Pennsylvania state law defines Agora and other public

11

charters as "public agencies."[5] This distinguishes charters from traditional public schools because, where a public school employee would generally work at one school but would sue the school district for FMLA claims,[6] a charter employee works at the charter and also sues that charter for FMLA violations. Because a school district can "be sued" for FMLA violations, per 24 P.S. § 17–1714–A(a)(2), a public charter can be sued for FMLA violations in lieu of a school board or school district.

### B. The Emergency Paid Sick Leave Act

Division E of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA"). FFCRA §§ 5101-5111. The EPSLA took effect on April 2, 2020 and expired on December 31, 2020. *See id*. §§ 5108-5109. The EPSLA required covered employers to provide employees with paid sick leave for certain COVID-19 related reasons. This paid sick leave was available to employees who were unable to work or telework because the employee was "caring for a son or daughter whose school or place of care is closed, or whose child care provider is unavailable, because of

---

[5] While the Court finds the language in § 17–1714–A meaningful in determining whether Agora is a "public agency," the Court agrees with the Third Circuit that this language does not "amount[ ] to an 'explicit state[ment]' that charter schools are political subdivisions." *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist*., 442 F. App'x 681, 686 (3d Cir. 2011). Rather, this language supports the Court's conclusion that Agora falls within the definition of a "public agency" for the purposes of the federal Labor Code, where the Code includes *agencies* of states and political subdivisions, and the Code specifically incorporates how a state and its political subdivisions define and administer public schools.

[6] Public schools within school districts cannot be sued because they are sub-units of their districts and "lack an independent corporate identity." *C.T. by Smith v. Delaplaine McDaniel Sch*., No. CV 17-4463, 2018 WL 1072385, at *3 (E.D. Pa. Feb. 26, 2018) (dismissing claims against elementary school where the claims were properly brought against the school district). Courts in Pennsylvania have routinely dismissed claims against individual schools because they are unnecessary parties or completely incapable of being sued for lack of an independent corporate identity. *See Smith v. Warwick School Dist*., 2016 WL 3854586, 1 (E.D. Pa. July 8, 2016); *Glickstein v. Neshaminy School Dist*., 1997 WL 660636, *3 (E.D. Pa. Oct. 22, 1997).

12

COVID-19." *See* FFCRA §§ 5102, 5110(2). The EPSLA entitled fulltime employees to eighty hours of job-protected paid sick leave. *Id*. §§ 5102(b)(2)(A); 5104(1).

The EPSLA defines a covered employer as a private entity or individual that employs fewer than 500 employees and a public agency or any other entity that is not a private entity or individual that employs one or more employees. FFCRA § 5110. The EPSLA also includes as an employer any "public agency" as defined by 29 U.S.C. § 203(x). As the Court has found that Agora is a "public agency" under EMFLEA, that finding is dispositive under the EPSLA as well. Even if Agora were not a "public agency," the EPSLA contains a catchall applying its provisions to "any other entity that is not a private entity." FFCRA § 5110. Pennsylvania state law makes it clear that Agora is a "public school." 24 P.S. § 17-1703-A. While Agora is independent from the local school board and school district in ways that traditional public schools are not, it is not a private entity. Therefore, Agora is a covered employer under the EPSLA.

## V. CONCLUSION

As the Court finds that Defendant is a covered employer under the EFMLEA and EPSLA, the Court will grant Plaintiff's Motion for Judgment on the Pleadings and deny Defendant's Cross-Motion for Judgment on the Pleadings. Appropriate orders follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**